## Roberts-Hudson v. Bayer Corporation

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■

*Jonathan Miller,* for plaintiffs.
*Albert Bixler,* for defendant.

ACKERMAN, *J.,* March 15, 2004—Plaintiffs filed the instant appeal from the order of this court dated February 6, 2004 and entered February 10, 2004, as follows:

"And now, February 6, 2004, it is hereby ordered, adjudged and decreed that defendant Bayer Corporation's motion to dismiss or stay pursuant to 42 Pa.C.S. §5322(e) is granted and plaintiff's complaint is hereby dismissed with prejudice, appropriate stipulations executed by the defendant having been presented and approved by this court contemporaneously herewith, and attached hereto."

Pursuant to Pa.R.A.P. 1925, this court entered an order directing the plaintiffs/appellants to file of record in the lower court and serve on the trial judge a concise statement of matters complained of on appeal no later than 14 days after the entry of such order.

In response to the 1925 order of this court, counsel for the plaintiffs/appellants filed a "concise statement of matters complained of on appeal" as follows:

"Plaintiffs complain of the trial court's grant of defendant Bayer Corporation's motion to dismiss or stay pursuant to 42 Pa.C.S. §5322(e), and the dismissal of plaintiffs' complaint. Plaintiffs also complain of the trial court's approval on February 6, 2004 of the three stipulations of Bayer Corporation."

While the plaintiffs/appellants filed the *conclusory* statement of opposing the dismissal of the plaintiffs' complaint, the reasons therefor are not set forth other than this court's approval of "three stipulations" of Bayer Corporation setting forth three different alternative forums which will be available to the plaintiffs, *i.e.,* Ohio, Florida and North Carolina, where the defendant Bayer Corporation will:

(1) Accept service of original process in a subsequent action by plaintiff alleging some injuries and damages relating to her ingestion of Alka-Seltzer Plus Cold Effervescent Medicine;

(2) Admit jurisdiction; and

(3) Waive the statute of limitations defense in any case filed, provided such action is filed within one year of the entry of the final order in the trial court dismissing the action pursuant to 42 Pa.C.S. §5322(e), or the last order entered on any appeal of that final order, whichever comes later.

Nowhere in this record do plaintiffs suggest that any *other adequate alternative forum* exists which the plaintiffs find more convenient or acceptable. Plaintiffs only argued that Pennsylvania alone was the appropriate forum for several reasons, none of which are detailed in their concise statement of matters complained of on appeal.

Accordingly, the failure to comply with the direction of this court may be considered by the appellate court as a waiver of all objections to the order of this court dated February 6, 2004.

However, in an abundance of caution, this court will deal with all issues raised during the proceedings prior to the notice of appeal.

Defendant Bayer Corporation filed the instant petition to dismiss or stay pursuant to 42 Pa.C.S. §5322(e) on December 16, 2003 (three and one-half months prior to trial). This case is one of the PPA mass tort litigation cases currently coordinated in the Complex Litigation Center of the Court of Common Pleas of Philadelphia County. It has been brought on behalf of plaintiff Jean Roberts-Hudson and Stan Hudson, husband-plaintiff, who are residents of North Carolina.

The affidavit of Albert G. Bixler, Esquire (exhibit "B") in support of the petition filed by the defendant provides in material part as follows:

(1) plaintiffs allege injury from ingestion of medicines containing phenylpropanolamine (PPA). Those cases have been coordinated in the Philadelphia Court of Common Pleas Mass Tort Program under the above caption. . . .

(4) Bayer has been named as a defendant in approximately 231 cases in this court. Plaintiffs allege personal injury as a result of ingesting Alka-Seltzer Plus Cold Effervescent Medicine manufactured by Bayer.

(5) Of the approximately 220 active cases filed in Philadelphia County in which Bayer has been named as a defendant, approximately 197, or 89.5 percent, are brought by non-Pennsylvanians.

(6) Alka-Seltzer Plus Cold Effervescent Medicine was marketed and sold by Bayer's Consumer Care division.

(7) Bayer's Consumer Care division was headquartered in Elkhart, Indiana until 1995. Its headquarters was then relocated to Morristown, New Jersey where it remained until the time Bayer stopped marketing Alka-

Seltzer Plus Cold Effervescent Medicine with PPA in November of 2000.

(8) Alka-Seltzer Plus Cold Effervescent Medicine was developed and manufactured in Indiana, as well as distributed from Indiana until November 2000.

(9) All Bayer documents relevant to this litigation are located in either New Jersey or Indiana.

(10) None of the relevant Bayer employees is located in Pennsylvania.

(11) . . .

(a) Plaintiff does not live in Pennsylvania;

(b) The Alka-Seltzer Plus Cold Effervescent Medicine at issue was not purchased in Pennsylvania;

(c) None of plaintiff's alleged injuries occurred in Pennsylvania;

(d) None of plaintiff's treatment for those alleged injuries occurred in Pennsylvania;

(e) None of the witnesses to plaintiff's purchase or ingestion of Alka-Seltzer Plus Cold Effervescent Medicine are located in Pennsylvania;

(f) None of plaintiff's doctors or other health care professionals engaged in treatment of plaintiff live in Pennsylvania;

(g) None of the witnesses relevant to plaintiff's damage claims live in Pennsylvania;

(h) None of plaintiff's medical records are located in Pennsylvania;

(i) None of the documents relating to plaintiff's supposed damages are in Pennsylvania.

(12) As this table demonstrates, there is no connection between Pennsylvania and the specific facts of this case.

(13) By electing to pursue claims in Pennsylvania, plaintiff has imposed substantial burdens on Bayer in this litigation.

(14) In order to undertake discovery depositions of out-of-state witnesses, Bayer must undertake a commission process which is significantly more cumbersome and more involved than the process required to take depositions of Pennsylvania residents.

(15) More significantly, many out-of-state witnesses must be deposed live and in person. For many of these witnesses, that will require Bayer's counsel to travel to foreign states in order to conduct depositions.

(16) While the plaintiffs generally have agreed to present themselves and their relatives in Pennsylvania for deposition, the remaining fact witnesses and medical witnesses must be deposed in their home states.

(17) As a result, even a short fact witness deposition requires substantial travel and, therefore, imposes a considerable burden on Bayer in terms of attorney time and expense. . . .

(19) Plaintiff's choice of forum, therefore, imposes on Bayer expense and considerations which are not imposed by cases brought by Pennsylvania residents. In fact, the pendency of this case brought by an out-of-state resident requires Bayer, for each out-of-state deposition, to undertake an analysis of the cost and benefit of taking such deposition which would not be necessary for an in-state deposition. Bayer should not be forced to make decisions like this which could significantly detract from

its defense of any given case, simply because the plaintiff has chosen to bring suit in a forum where neither the plaintiff, the fact witnesses, the medical treaters, nor the documents are located, and the injury did not occur.

(20) This problem cannot be cured by videoconferencing or other technology. Videoconferencing is, at best, a poor substitute for live depositions. In situations where a witness must review documents (such as a medical doctor), videoconferencing is cumbersome and often results in confusion and poor quality transcripts. Bayer should not have to compromise on the method of discovery it uses simply because plaintiff has chosen to file suit in a jurisdiction (Pennsylvania) that has no relationship to this litigation.

(21) Moreover, persons located outside of the Commonwealth of Pennsylvania cannot be subpoenaed to appear at trial. Thus, Bayer is foreclosed from bringing to trial fact witnesses it might identify in various cases who are located outside of Pennsylvania.

(22) This will prevent Bayer from bringing to trial witnesses (or even obtaining a trial deposition from them) unless those witnesses can be identified early enough before trial to allow for commissions and subpoenas to issue and travel to the witness' state to be accomplished without interfering with trial dates. If a need for a particular witness develops on the eve of trial or at trial, no testimony from that out-of-state witness could be obtained.

(23) Once again, this imposes undue burdens and hardships on Bayer which are not present in cases brought by Pennsylvania residents and deprives Bayer of opportu-

nities to present a full and fair defense simply because of the plaintiff's strategy decisions when bringing the lawsuit.

(24) Transfer of this case to Ohio, where plaintiff resided during the time period relevant to her injury, would eliminate these burdens and hardships.

(25) Transfer of this case to Ohio, where plaintiff resided during the time period relevant to her injury, will not prejudice plaintiff.

(26) Obviously, plaintiff's home state has a significantly higher interest in a lawsuit involving its citizen than does Pennsylvania.

(27) Plaintiff cannot claim that suing in the state in which she resided at the time of injury deprives her of any right or claim which she would otherwise have in this court. . . .

(29) Thus, because, (1) this case has no connection with Pennsylvania, (2) none of Bayer's relevant activities occurred in this Commonwealth, (3) the burdens upon Bayer of the pendency of this case are manifest, (4) Bayer will be prejudiced by the lack of ability to subpoena trial witnesses if it decides such witnesses are relevant, and (5) this court and the Commonwealth of Pennsylvania have no business serving as a "national court" for cases having no connection to Philadelphia or Pennsylvania, transfer of this case is appropriate.

Exhibit "B1" to affidavit of Albert G. Bixler, Esquire provides the following:

(1) Place of residence of plaintiff Jean Roberts-Hudson is 1 Sunnyside Street, Granite Falls, North Carolina.

(2) *Place of purchase of Alka-Seltzer Plus Effervescent Cold Medicine:*

K-Mart
1105 North Court Street
Medina, OH 44256

(3) *Name and location of health care facility and/or health care providers involved in treatment for alleged injuries:*

Medina General Hospital
1000 E. Washington Street
Medina, OH 44258

M.H. Toor M.D.
Medina General Hospital
1000 E. Washington Street
Medina, OH 44258

Medina Life Support Team
Medina General Hospital
1000 E. Washington Street
Medina, OH 44258

Gwendolyn D. Hughes M.D.
3617 Reserve Commons
Medina, OH 44256

Metrohealth Medical Center
3395 Scranton Road
Cleveland, OH

Joel Vandersluis M.D.
Metrohealth Medical Center
3395 Scranton Road
Cleveland, OH

(4) *Name and location of all fact witnesses:*

Stanley P. Hudson
1 Sunnyside Street
Granite Falls, NC

Karen Bartkowiak
4130 Sharon-Copley Road
Medina, OH

A review of the civil docket report (exhibit "C") notes that the trial in this matter was scheduled for March 29, 2004, and that the case was filed on August 7, 2001.

At the commencement of suit, plaintiffs lived at 70 Buccaneer Drive, Leesburg, Lake County, in the *state of Florida.* (emphasis supplied) (See exhibit "D," civil action complaint—short form.)

That complaint contains the following material averments: . . .

(2) Plaintiff claims the following products containing PPA caused her injury: Alka-Seltzer Plus.

(3) Plaintiff purchased and/or obtained the products containing PPA from a drug store on or about March of 1992.

(4) Plaintiff was diagnosed on or about March 22, 1992, by Medina General Hospital as having an intracerebral hemorrhage.

(4a) Plaintiff first learned that her injuries described therein were related to the ingestion of a product containing PPA on or about January 2001. . . .

(8) The following claims asserted in the master complaint, and the allegations with regard thereto in the master complaint, are herein adopted by reference:

Count One: negligence

Count Two: breach of implied warranty

Count Three: breach of express warranty

Count Four: strict liability

Count Five: violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq. . . .

Count Eight: loss of consortium

Count Nine: punitive damages

*Plaintiffs' fact sheet (exhibit "E")* provides in material part as follows: . . .

(D) *Current or last employer:*

Wadsworth-Rittman Hospital
195 Wadsworth Road, Wadsworth, OH 44281
Dates of employment: 11/91-3/92
Occupation: Respiratory therapist . . .

(G) *Date and place of birth:* 6/3/42; Elizabeth, NJ

(H) *Sex:* Female . . .

(M) Have you ever filed a social security disability claim?

Yes

If yes, please state: . . .

(2) Where claim was filed: Medina, OH

(3) Nature of disability: Results of stroke

(4) Period of disability: 1992 to the present . . .

(R) Identify each address at which you have resided during the last 10 years, including time periods of residence:

6190 Wadsworth Road, Medina, OH 44256 1989-11/94

70 Buccaneer Drive, Leesburg, FL 34788 11/94-Present

VI. *Current Medical Condition*

(A) Do you currently suffer from any physical injuries, illnesses or disabilities?

Yes

(1) Identify the injury, illness, or disability, symptoms and date(s) of onset:

*Injury, illness or disability:* Intracerebral hemorrhage

*Symptoms:* Mental and physical fatigue, memory and cognitive problems, limited attention span, weakness, anxiety, depression

*Date(s) of onset:* March 22, 1992

*Date(s) of diagnosis:* March 22, 1992

(2) By whom first diagnosed:

M.H. Toor M.D.—Radiologist
Medina General Hospital, Medina, OH 44258

VII. *Medical Background . . .*

(I) If you responded yes to any of the above, please identify the condition, the date of onset and state the name of the physician or other person (and, if not provided in the accompanying list, the address of the physician or the other person) who made the diagnosis or informed you of the condition.

(1) *Condition:* Hemorrhagic stroke

*Onset:* 3/22/92

*Name and address of diagnosing physician or other person:* M.H. Toor M.D., Medina General Hospital, Medina, OH

*Generic name, brand name, strength and daily dose of any medication prescribed:* None . . .

(4) *Condition:* Heart palpitations, dizziness, lightheadedness

*Onset:* 8/01

*Name and address of diagnosing physician or other person:*

Dr. David Lichtinger, 19320 U.S. Highway 27, Leesburg, FL 34788

*Generic name, brand name, strength and daily dose of any medication prescribed:* Paxil, 20 mg./day; Wellbutrin, 150 mg./day . . .

(6) *Condition:* Memory loss

*Onset:* 3/22/92

*Name and address of diagnosing physician or other person:* Plaintiff cannot recall at this time

*Generic name, brand name, strength and daily dose of any medication prescribed:* No medications

(J) To the best of your knowledge, have your *parents, siblings* or *grandparents* experienced, been diagnosed with or treated for any of the following: . . .

(2) Aneurysm Yes . . .

(16) Stroke of any type (*e.g.,* hemorrhage stroke, ischemic stroke, intracranial hemorrhage, intracerebral hemorrhage, subarachnoid hemorrhage) Yes . . .

(27) Neurological disease or condition Yes

(K) If you answered yes to any of the preceding, please identify the person who experienced, was diagnosed with or was treated for that condition:

(1) *Person:* K.L. Foster

*Relationship:* Father

*Condition:* Aneurysm

*Date of onset:* 6/76

*Generic name, brand name, strength and daily dose of any medication prescribed:* Plaintiff does not know.

(L) If you claim psychological, cognitive or emotional injury as a consequence of using any PPA-containing medications, state whether you have experienced or been treated for any psychological, psychiatric (including depression) or emotional problem prior to the use of the PPA-containing medications at issue.

Yes

If yes, please state:

(1) Name and address of each person who treated you:

(a) Jack Marsick—Counselor
30 Glen Oaks Lane, Berea, OH 44017

(b) Dr. Ann Berlin—Psychologist
Rocky River, OH

(c) Catholic Social Services Bureau
246 Northland Drive
Medina, OH 44256

(d) Dr. R. McBurney
Southwest General Hospital
Middleburg Heights, OH

(e) Dr. Thomas Valente—Psychiatrist
Lifestream Behavior Center
515 W. Main
Leesburg, FL 34788

(f) George P. O'Donnell
597 Maitland Avenue
Altamonte Springs, FL 32701

(g) Pastor Bruce Hamilton
Silver Lake Community Church
34030 Radio Road
Leesburg, FL 34789

(h) Jim Woods, OTR-L
Avante Outpatient Center
1704 W. Citrus Blvd.
Leesburg, FL 34748

(2) *Condition for which treated:* Depression

(3) *When treated:* Plaintiff cannot recall specific dates, other than that they were prior to 3/92 stroke. . . .

(N) Have you ever received any traumatic injury to your head, neck or chest?

Yes

If yes, please state when and describe the injury.

*When:* 3/22/92 *Injury:* Hemorrhagic stroke

*Name of doctor or hospital providing treatment:* Medina General Hospital, Medina, OH

*Medications taken:* None . . .

(Q) To the best of your knowledge, state which of the following tests was administered after your use of the PPA-containing medications at issue in this lawsuit.

(1) Echocardiogram No

(2) Electrocardiogram Yes

(3) Electroencephalogram No

(4) Arterial or cranial angiogram Yes

(5) MRI, cat-scan or x-ray of the head, neck or brain Yes

(6) MRA (magnetic resonance angiography) Yes

(7) Other diagnostic test or imaging of the brain No

VIII. *Use of Cough and Cold Medications*

(A) Please complete the following chart with respect to each cough and cold medication you recall taking during the period beginning 10 years before your injury through to the present.

| Generic name | Brand name | Description | Single dose taken | Daily dose taken | Approximate dates of first and last use | Prescribed by or on whose advice | Sold by | Reason for taking it |
|---|---|---|---|---|---|---|---|---|
| | Alka-Seltzer Plus | Capsules | | X | 3/15/92-3/21/92 | | K-Mart | cold, sinus problems |
| | Coricidin | | | | | | | cold, sinus problems |
| | Contac | | | | | | | cold, sinus problems |
| | Tylenol | | | | | | | cold, sinus problems |
| | Afrin | | | | | | | cold, sinus problems |

. . .

X. *The Injury*

(A) On what date and time did you first experience any symptoms you believe are related to the injury alleged in your complaint?

3/22/92

(B) In what city and state were you when you experienced those symptoms?

Medina, OH

(C) Were there any witnesses to the symptoms identified above? If so, state their names, addresses, phone numbers and relationship to you.

Stan Hudson; 70 Buccaneer Dr., Leesburg, FL; ***-***-****; husband

Karen Bartkowiak; 4130 Sharon-Copley Rd., Medina, OH; ***-***-****; neighbor

(D) When did you first contact a doctor or health care professional concerning this injury?

Immediately

(E) Who was the first such contact?

EMTs from Medina General Hospital

(F) If you were taken to a doctor or health care facility for the injury alleged in the complaint, state the name and address of the persons, police department, fire department, emergency medical workers, or ambulance company who took you to the doctor or health care facility.

Medina Life Support Team—Medina General Hospital, 1000 E. Washington Street, P.O. Box 427, Medina, OH 44258

(G) When did you obtain the PPA-containing medication which you claim caused your injuries?

Approximately mid-March 1992

(H) State the name and address of the retailer from whom the PPA-containing medication which you claim caused your injuries was obtained?

K-Mart, Medina, OH

(I) Was there any expiration date on that medicine? If so, what?

Plaintiff does not recall.

(J) Describe how the medicine was packaged, including the size and color of the packaging and/or box.

Plaintiff does not recall.

(K) If that packaging contained a "seal," was the seal broken when you obtained the medicine?

Plaintiff does not recall.

(L) Who has possession of the packaging, inserts and labeling of all PPA-containing products which you claim caused your injuries?

Plaintiff does not know. The package was discarded by the plaintiff years ago.

(M) State any lot number or other identification numbers on the medicine or its packaging.

Plaintiff does not know.

(N) State the form of the medicine (liquid, pill, capsule).

Capsules.

(O) For each medication (prescription or over the counter), drug (licit or illicit), chemical, dietary supplement, appetite suppressant or herbal remedy you recall

taking at any time during the 30 days preceding your injury, complete the following table.

| Name of substance | Trade name, if any | Date and time taken | Amount taken | Prescribed by or on whose advice | Reason for taking it |
|---|---|---|---|---|---|
| Prozac | | 1/day | 20 mg. | Dr. Hughes | Depression |
| Alka-Seltzer Plus | | 3/15-3/21/92 | PRN per package directions | Over the counter | Cold |
| Afrin | | 3/20-3/21/92 | PRN per package directions | Over the counter | Cold |
| Vitamin C | | Cannot recall | 500 mg. | Over the counter | Cold |

(P) For each caffeine-containing substance you recall taking during the 72 hours preceding the incident (including coffee, tea, colas, etc.), complete the following table.

| Name of substance | Trade name if any | Date and time taken | Amount taken | Amount consumed within 6 hours of the incident |
|---|---|---|---|---|
| Coffee | | Cannot recall | 2 cups per day | None |
| Cola | Pepsi | Cannot recall | Cannot recall | None |

XI. *Injury Claims . . .*

(B) If you claim or expect to claim that you lost earnings or suffered impairment of earnings capacity as a result of any condition which you believe was caused by your PPA-containing medication:

(1) Complete the following information with respect to your employment for the period beginning last 10 years before your injury through to the present.

| Employer | Address | Type of business/ position | Dates of employment | Salary |
|---|---|---|---|---|
| Southwest General Hospital | Bagley Road, Middleburg Hts., OH | Respiratory therapy/ pulmonary rehab coordinator | 7/78-7/89 | $13.61/hr. |
| Medina General Hospital | Medina, OH | Respiratory therapist (part-time) | 8/89-8/90 | 1991: $859.11 |
| Wadsworth-Rittman Hospital | Wadsworth, OH | Respiratory therapist (part-time) | 11/91-3/92 | 1991: $276.98 |
| Kent State University | Kent, OH | Graduate assistant (while full-time student) | 8/90-3/92 | 1991: $5,141.65 |

(D) Please identify all persons who you believe possess information concerning your injury and/or your current medical conditions and for each, state their name, address, telephone number and a description of the information you believe they possess.

Stan Hudson; husband; 70 Buccaneer Dr.; Leesburg, FL 34788; ***_***_****

Shelli Roberts; daughter; 5742 Drake Ct.; Alexandria, VA 22311; ***_***_****

Wendi Roberts; daughter; 457 Yale Avenue, Zanesville, OH 43701; ***_***_****

Charles Kegley; Kent State Univ. Department Head; 1320 Lake Roger Dr., Kent, OH; ***_***_****

Mrs. Cathy Bologna; 68 Buccaneer Dr., Leesburg, FL; ***_***_****.

The aforementioned are in possession of information regarding the plaintiff's mental and physical limitations as well as the physical and emotional effects of her stroke. . . .

*List of Medical Providers and Other Sources of Information:* . . .

List the name and address of each of the following:

(A) Your current primary care physician(s):

Dr. David Lichtenger
29320 U.S. Highway 27
Leesburg, FL 34748

(B) To the best of your ability, identify each of your primary care physicians for the last 20 years:

(1) Dr. W. Favis—1997-1999
9846 S. U.S. Highway 441 Suite 101
Leesburg, FL 34788

(2) Dr. Gwen Hughes—1989-11/94
3617 Reserve Commons
Medina, OH 44256

(3) Dr. McBurney—1980-1989
Southwest General Hospital
Middleburg Heights, OH

(C) Each cardiologist or neurologist who has ever seen or treated you:

(1) Dr. Nidsa Martir—Neurologist
4700 Via Del Medico
Leesburg, FL 34748 . . .

(E) Each hospital where you have received inpatient treatment during the last 20 years:

(1) Southwest General Hospital
Bagley Road
Middleburg Heights, OH
Surgery—Left benign ovarian cyst removed

(2) Medina General Hospital
Medina, OH
Stroke treatment

(3) Metrohealth Medical Center
3395 Scranton Road
Cleveland, OH
Post stroke treatment

(F) Each hospital or health care facility where you have received outpatient treatment (including treatment in an emergency room) during the last 20 years:

(1) Medina General Hospital—Emergency Room
Medina, OH

(2) Avante Outpatient Center—Rehabilitation
1704 W. Citrus Blvd.
Leesburg, FL 34748

(3) Florida Musculoskeletal Institute—Rehabilitation

600 North Boulevard West
Leesburg, FL

(G) Each other physician or health care provider from whom you have received treatment, with whom you have consulted regarding your health, or who has examined you in the last 20 years with the exception of psychiatrists or psychologists: . . .

(2) Dr. Robert Maiello—Physical Medicine & Rehabilitation

1704 N. Citrus Blvd.
Leesburg, FL 34749

(3) Mr. Mosely—Vocational Rehabilitation
1101 Lake Harris Drive
Tavares, FL

(H) Each pharmacy, drugstore and the like where you have had prescriptions filled during the last 20 years or from which you have ever received any prescription medication:

(1) Eckerd Drugs
16601 U.S. Highway 4415
Leesburg, FL 34788

(2) K-Mart
1105 North Court Street
Medina, OH 44256

(3) Medina General Hospital Clinic
1000 E. Washington Street
Medina, OH 44256

(4) Target Pharmacy
10401 Highway 441
Leesburg, FL 34788

(I) If, but only if, you claim that you suffered psychological or emotional injuries as a result of using PPA-containing medications, list each psychiatrist, psychologist, mental health counselor, therapist and/or social worker from whom you have received treatment or with whom you have consulted regarding your health during the last 20 years:

(1) Jack Marsick—Counselor
30 Glen Oaks Lane
Berea, OH 44017

(2) Ann Berlin—Psychologist
Rocky River, OH

(3) Catholic Social Services Bureau
246 Northland Drive
Medina, OH 44256

(4) Dr. Thomas Valente—Psychiatrist
Lifestream Behavioral Center
515 W. Main
Leesburg, FL 34788

(5) George P. O'Donnell, M.S.
597 Maitland Avenue
Altamonte Springs, FL 32701

(6) Pastor Bruce Hamilton
Silver Lake Community Church
34030 Radio Road
Leesburg, FL 34789

(7) Jim Woods, OTR-L
Avante Outpatient Center
1704 W. Citrus Blvd.
Leesburg, FL 34748

(8) Dr. R. McBurney
Southwest General Hospital
Middleburg Heights, OH

Only one fact witness, Shelli Roberts, daughter, lives outside of Pennsylvania and the three states stipulated to by defendant as alternative forums. Ms. Roberts lives in Virginia which is next door to North Carolina.

This case is one of the PPA mass tort litigation cases currently coordinated in the Complex Litigation Center of the Court of Common Pleas of Philadelphia County. It has been brought by a resident of North Carolina who lived in Ohio during the time period surrounding her injury. Plaintiff, Jean Roberts-Hudson, lived in Ohio until 1994, at which time she and her husband, Stanley P. Hudson, moved to Leesburg, Florida. Plaintiff now resides in North Carolina as of February of 2003. (J. Roberts-Hudson dep., at 8-10, attached hereto as exhibit "A." [not published herein.) Ms. Roberts-Hudson claims to have purchased and consumed a PPA-containing medicine in the state of Ohio, and alleges that, as a result of exposure to PPA, she sustained an injury that was discovered, diagnosed and treated in Ohio. Most of the witnesses to the alleged purchase of and exposure to PPA, the discovery, diagnosis and treatment of the claimed injury, and other alleged damages claimed in this suit reside in Ohio. Most of plaintiff's medical and pharmacy records, and most of the health care providers who may testify or otherwise have information relevant on the issues of causation and damages, are located in Ohio. Plaintiff did receive some post-stroke occupational therapy and counseling upon her move to Florida in 1994, and records and witnesses related to those post-stroke treatments are located in Florida.

Plaintiffs commenced this products liability action by writ of summons on August 7, 2001, in the Court of Common Pleas of Philadelphia County at August term, 2001 no. 000255. (See C.P. Phila. docket entries, exhibit "C.") A short form complaint was subsequently filed on

November 28, 2001, consistent with the directives of case management order 1. (See short form complaint (SFC), exhibit "D.")

The defendant named in this case is Bayer Corporation, which plaintiffs identify as the manufacturer and seller of Alka-Seltzer Plus Cold Effervescent Medicine (ASP). (SFC, exhibit "D" at ¶2.) Bayer is an Indiana corporation with its principal place of business near Pittsburgh, Pennsylvania.

Plaintiffs' own allegations and representations as to the operative facts establish that the factual underpinnings of this case arose entirely outside Pennsylvania, and that none of the case-specific witnesses or other evidence is located within this Commonwealth.

Ms. Roberts-Hudson is a recent citizen of North Carolina, residing at 1 Sunnyside Street, Granite Falls, North Carolina. (Jean Roberts-Hudson dep., exhibit "A" at 9:2-7.) Plaintiff, along with her husband, Stanley P. Hudson, lived in Florida for nine years (from 1994 to 2003). (PFS, exhibit "E" at section II(C, R).) Prior to moving to Florida, plaintiff and her husband resided in Medina, Ohio, from 1989 to 1994, during which time plaintiff suffered the injury which she attributes to the ingestion of ASP. Neither plaintiff nor her husband has ever lived in Pennsylvania. See *id.*

Plaintiff was employed as a respiratory therapist at Wadsworth Rittman Hospital in Ohio at the time of injury. She was also attending Kent State University in Ohio in pursuit of a master's degree while working as a graduate assistant. (PFS, exhibit "E," at sections II(D), III(A).)

Plaintiff's employment history as a respiratory therapist dates back to 1978 when she was employed by Southwest General Hospital in Ohio. (PFS, exhibit "E," at section XI(B).) She was employed as a respiratory therapist by Medina General Hospital in Ohio from 1989 to 1990. *Id.*

Plaintiff received treatment for her injury at Medina General Hospital in Medina, Ohio, as well as Metrohealth Medical Center in Cleveland, Ohio. She was first diagnosed as having had an intracerebral hemorrhage by M.H. Toor M.D. of Medina General Hospital. (PFS, exhibit "E," at section VI(A).) None of the healthcare providers identified by plaintiff are located in Pennsylvania.

Rather, every medical provider with whom she has consulted or treated has been in Ohio (or Florida, upon her move to that state in 1994). Moreover, the other medical providers with whom she has consulted or treated during the last 20 years were either in Ohio or Florida. (PFS, exhibit "E," at list of medical providers sections A-G.)

Plaintiff alleges that she suffered an intracerebral hemorrhage as a result of taking ASP. (PFS, exhibit "E," at sections I(C, D), VII(I)(1), X(G, J, N).) She alleges that she purchased ASP tablets from K-Mart located in Medina, Ohio. (PFS, exhibit "E," at sections VIII(A, B), X(G, H).) She does not identify any pharmacy in Pennsylvania where she alleges to have purchased any cough or cold medication. Ms. Roberts-Hudson allegedly consumed the medication between March 15, 1992 and March 21, 1992, throughout which time she resided in Ohio. *Id.* at section X(O).

The events leading to the diagnosis and treatment of the alleged injuries, as well as the diagnosis and treatment themselves, all took place in Ohio, with subsequent rehabilitation pursued in Florida upon plaintiff's move to that state. Ms. Roberts-Hudson contends that she first experienced symptoms that she believes to be related to the injury alleged in her SFC on March 22, 1992, after having intercourse with her husband. (PFS, exhibit "E," at §X(A-C); Jean Roberts-Hudson dep., exhibit "A" at 103-104.)

Plaintiff alleges that her husband called her neighbor, Karen Barkowiak, a nurse's assistant, who assisted plaintiff while waiting for the arrival of the EMT. Plaintiff was taken to Medina General Hospital in Ohio by the Medina Life Support Team and was thereafter admitted to Metrohealth Medical Center in Cleveland, Ohio. (PFS, exhibit "E," at section X(E-F); list of medical providers at section E.)

Plaintiff reports that she was diagnosed as having had a hemorrhagic stroke on March 22, 1992, by M.H. Toor M.D. of Medina General Hospital, Medina, Ohio. *Id.* at section VII(I)(l).

She underwent a series of tests at Medina General Hospital, including an EKG and CAT scan administered by Gwendolyn D. Hughes M.D. (PFS, exhibit "E," at section VII(R).) She was then transferred to Metrohealth Medical Center in Cleveland for neurosurgery intervention. There, she underwent an angiogram administered by Joel Vandersluis M.D. *Id.* On March 26, 1992, she was discharged from Metrohealth after inpatient occupational and physical therapy. She continued to receive

outpatient physical therapy at Medina and Metrohealth for the next several months. She also received psychological counseling from Catholic Social Services Bureau and Dr. Thomas Valente for depression that she alleges is the result of her injury. (PFS, exhibit "E," at section VII(L), list of medical providers.)

Upon her move to Florida, Ms. Roberts-Hudson sought treatment from Dr. Robert Maiello, 1704 W. Citrus Boulevard, Leesburg, Florida and Avante Outpatient Center. (PFS, exhibit "E," at list of providers sections F, G.) She also received vocational rehabilitation from a Mr. Mosely, 1101 Lake Harris Drive, Tavares, Florida. *Id.* at section G. She was treated by Dr. Nidsa Martir (neurologist). (PFS, exhibit "E," at list of medical providers.)

All of the medical and diagnostic testing that Ms. Roberts-Hudson has undergone since her alleged use of a PPA-containing medication was administered by treating physicians in Ohio, with some post-stroke rehabilitation and counseling undertaken in Florida after the couple's move in 1994. *Id.* at section VII(Q, R), list of medical providers.

In sum, every attending and consulting physician, and every health care facility, with information relative to plaintiff's condition, hospitalization and diagnostic studies is located in Ohio, with some post-stroke rehabilitation and counseling undertaken in Florida after the couple's move in 1994. *Id.,* sections VII(I), VII(A-F), list of medical providers.

In addition to her medical providers, plaintiff identifies two witnesses to her alleged onset of symptoms on

March 22, 1992: Stan Hudson, her husband; and Karen Bartkowiak, her neighbor at 4130 Sharon-Copley Road, Medina, Ohio. (PFS, exhibit "E," at section X(C).)

Plaintiff has never lived in Pennsylvania, has never treated with a Pennsylvania doctor and has never purchased a cough/cold medication in Pennsylvania.

Plaintiff commenced this lawsuit against Bayer some nine years after first allegedly consuming a PPA-containing medicine, and nine years after she first alleges to have experienced symptoms of the injury she attributes to that medicine. Ms. Roberts-Hudson has asserted claims of negligence, breach of warranty, strict liability, unfair trade practices, loss of consortium and punitive damages. (SFC, exhibit "D," at section 8.) Plaintiff and her husband seek to maintain this lawsuit in Philadelphia County, even though they have never lived in this county or state, none of the witnesses to their claims resides here, none of the medical or other records pertaining to Ms. Roberts-Hudson's claims are located here, and none of the alleged purchases of or exposure to the medicine occurred here.

Rather, the only jurisdiction with any meaningful connection to this case is Ohio, where all of the case-specific events giving rise to Ms. Roberts-Hudson's claims took place, and where most of the case-specific witnesses and evidence are located.

Plaintiffs' response to defendant Bayer's forum non conveniens motion, filed with the court on January 5, 2004, provides no valid basis for denial of Bayer's motion. Plaintiffs mostly rely on the same arguments previously advanced and rejected by this court in the

*Pearson, Engstrom, Weiding, Thorpe* and *Hunter* matters, which were all decided after extensive briefing, oral argument and the submission of parties' affidavits. This court rejected more of the same arguments on reconsideration in those cases for the reasons set forth in the court's November 5, 2003 supplemental opinions.

It is clear that the only jurisdiction with any meaningful connection to this case are the states of Ohio and Florida. North Carolina is the present residence of plaintiffs and, thus, is also of material relevance. Plaintiffs do not appear to dispute any of the material facts set forth in Mr. Bixler's affidavit.

The doctrine of forum non conveniens has been codified at 42 Pa.C.S. §5322(e), which provides as follows:

"(e) *Inconvenient forum.*—When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just." 42 Pa.C.S. §5322(e); *Cinousis v. Hechinger Department Store,* 406 Pa. Super. 500, 502, 594 A.2d 731, 732 (1991).

The case of *Humes v. Eckerd Corporation,* 807 A.2d 290 (Pa. Super. 2002) is instructive as to the standard for this court to follow in this case, having clarified prior case law.

The *Humes* court stated at page 295:

"In the absence of specific guidance from the Pennsylvania Supreme Court, and after consideration of the existing body of case law, we will follow *Poley, [infra],*

and decline to find error in the lower court's refusal to apply *Cheeseman* to this section 5322(e) petition."

"In *Poley v. Delmarva Power and Light Company,* 779 A.2d 544 (Pa Super. 2001), a panel of this court addressed an appeal of a motion to dismiss for forum non conveniens with leave to file in the state of Maryland. In setting forth the standard of review of an order dismissing an action on the basis of forum non conveniens, the *Poley* court did not apply the *Cheeseman* 'oppressive and vexatious' test, but instead declared, inter alia, that:

"The two most important factors for the court to consider [in making the determination of whether to dismiss a suit on the basis of forum non conveniens] are (1) a plaintiff's choice of the place of suit will not be disturbed except for weighty reasons, and (2) no action will be dismissed unless an alternative forum is available to the plaintiff.

"*Poley,* 779 A.2d at 546 (citing *Page v. Ekbladh,* 404 Pa. Super. 368, 590 A.2d 1278 (1991)." (At pages 293-94, *Humes, supra.*)

The *Humes* court thus agreed that the trial court was correct in applying the "private and public factors" test instead of the "oppressive and vexatious" test. (Page 291.) The *Humes* court reversed the trial court because a complaint in the underlying case had not yet been filed and, thus, there was an insufficient record to support dismissal under section 5322(e).

The case of *Cinousis v. Hechinger Department Store,* 406 Pa. Super. 500, 594 A.2d 731 (1991), provides the meaning of "private and public factors" to be consid-

ered, citing *Plum v. Tampax Inc.,* 399 Pa. 553, 560-62, 160 A.2d 549, 553 (1960), quoting comment at section 117(e) of Restatement (Second) Conflict of Law. See also, *Rini v. New York Central Railroad Co.,* 429 Pa. 235, 238-40, 240 A.2d 372, 373-74 (1968), as follows:

" 'It is well within the power of [a trial] court, in the interests of justice, to decline to exercise its jurisdiction where, upon consideration of the parties, the witnesses, the situs of the cause of action and other kindred reasons, the litigation can more appropriately be conducted in another forum.' *Plum v. Tampax Inc., supra,* 399 Pa. at 560, 160 A.2d at 552. See *Koster v. (American) Lumbermen's Mutual Casualty Co.,* 330 U.S. 518, 676 S.Ct. 828, 91 L.Ed. 1067 (1947) and *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). See also, *Alfred v. Philadelphia Coca-Cola Bottling Co. Inc.,* 366 Pa. Super. 510, 513, 531 A.2d 792, 794 (1987) ('[S]ection 5322(e) applies when a tribunal of this jurisdiction determines that a tribunal in another jurisdiction would offer a more convenient and appropriate situs for the action.'). The factors to be considered in making such a determination have been identified by our Supreme Court as follows:

"(c) Factors to be considered. The two most important factors look to the court's retention of the case. They are (1) that since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed in any event unless an alternative forum is available to the plaintiff. Because of the second factor, the suit will be entertained, no matter how inap-

propriate the forum may be, if defendant cannot be subjected to jurisdiction in other states. The same will be true if plaintiff's cause of action would elsewhere be barred by the statute of limitations, unless the court is willing to accept defendant's stipulation that he will not raise this defense in the second state.

"The remaining factors can best be grouped under the two principal interests involved: those of the parties and those of the public. This has been done as follows by Mr. Justice Jackson in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 [67 S.Ct. 839, 843, 91 L.Ed. 1055] (1947):

"If the combination and weight of factors requisite to given results are difficult to forecast or state, those to be considered are not difficult to name. An interest to be considered, and one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained. The court will weigh relative advantages and obstacles to a fair trial, . . .

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is an

appropriateness, too, in having the trial . . . in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

"These two sets of factors are not mutually exclusive but rather supplement each other." 406 Pa. Super. at 502-503, 594 A.2d at 732 of *Cinousis.*

In *Cinousis,* 406 Pa. Super. at 504-505, 594 A.2d at 733, the Supreme Court further stated:

"The plaintiffs are not residents of Pennsylvania. The pertinent events giving rise to the cause of action occurred outside of Pennsylvania. The relevant medical records of plaintiff's physician after the alleged accident are located outside of Pennsylvania. The known witnesses reside outside of Pennsylvania and any additional witnesses will most likely reside outside of Pennsylvania. Finally, the plaintiffs have another more convenient forum available to them in New Jersey.

"We discern no abuse of discretion in the trial court's decision.

"Because appellants are not residents of Pennsylvania, the interest of this Commonwealth in providing a forum for its residents to litigate their disputes is not implicated. See *Bolanos v. Gulf Oil Corp.,* 502 F. Supp. 689, 691 (W.D. Pa. 1980), *aff'd,* 681 F.2d 804 (3d Cir. 1982). The fact that the witnesses and documentary evidence are located in New Jersey make it *potentially* more difficult to try this case in Pennsylvania. Continued proceedings in Pennsylvania also offer the *possibility* of

delay and increased costs in completing a trial. Additionally, because the events at issue in this case occurred in New Jersey, it is likely that the substantive rights of the parties will be determined according to New Jersey law. Under similar circumstances, it has been observed that: (emphasis supplied)

" 'in view of the paucity of contacts that the instant litigation has with the Commonwealth of Pennsylvania, absent compelling reasons, appropriate weight should be given to the desirability of having a Pennsylvania judge interpret and apply the law of another jurisdiction to determine the respective rights and duties of the parties in question. The only discernible contact that this case has with Pennsylvania is the location of plaintiff's counsel, and we refuse to recognize this as a compelling consideration. In sum, the circumstances presented in the instant case supply the "weighty reasons" necessary to disturb this plaintiff's choice of forum.'

"*Westerby v. Johns-Manville Corp.*, 32 D.&C.3d 163, 174-75 (Phila. Cty. 1982) (cited with approval in *Alford v. Philadelphia Coca-Cola Bottling Co. Inc.*, [336 Pa. Super. 510, 531 A.2d 792 (1987)]). See also, *Daugherty v. Inland Tugs Co.*, [240 Pa. Super. 527, 359 A.2d 465 (1976)] (trial court abused its discretion by refusing to dismiss lawsuit whose only contact with Pennsylvania was that plaintiff's expert witness resided there); *Norman v. Norfolk and Western Railway Co.*, 228 Pa. Super. 319, 323 A.2d 850 (1974) (same).

"In view of the absence of any significant contact between appellant's cause of action and this Commonwealth, the need to apply the substantive law of New

Jersey, and the significant backlog of cases which currently plagues the dockets of the Philadelphia court system, we hold that the trial court did not abuse its discretion when it dismissed appellant's action in the instant case."

In the case of *Tyro Industries v. James A. Wood Inc.,* 418 Pa. Super. 296, 299-302, 614 A.2d 279, 281-82 (1992), the facts were essentially as follows:

"Appellant Tyro Industries (Tyro) is a New York corporation registered to do business in Pennsylvania, and which maintains its principal place of business in New York. Appellee FCO is a business incorporated under the laws of New York. Appellee Great American Insurance Company is a New York corporation. The instant controversy was generated out of a construction project in Northampton County, Pennsylvania, wherein Tyro was a subcontractor with the Pennsylvania Department of Transportation (PennDOT), and was required to maintain insurance coverage in order to work on that project. James Wood Inc. (later released from case), acting as an insurance broker, issued insurance coverage under a Great American Insurance Company policy. AFCO financed payment for the insurance coverage.

"The insurance contract was written and subsequently suspended, for alleged failure to pay premiums, in the state of New York. As a result of the suspension, Tyro was discharged from the construction project. Consequently, Tyro filed a complaint in the Philadelphia Court of Common Pleas alleging that Great American, AFCO, and Wood breached their contracts with Tyro when they caused the insurance coverage to be improperly suspended. . . .

"The court noted that Tyro, AFCO, and Great American are all New York corporations. Trial court opinion, 10/17/91, at 4. The court also noted that the insurance financing agreement, the insurance contract, and the alleged breach thereof all arose in New York, and that virtually all witnesses reside in New York. *Id.* The court considered these and other private factors it was required to consider in a forum non conveniens analysis. . . .

"The court took note of the fact that resolution of the case in Philadelphia County would result in a needless conflict of laws situation, because New York banking laws would apply to these facts. Trial court opinion, 10/17/91, at 6-7. The court pointed out that if the case were heard in Philadelphia, Pennsylvania tax dollars would be spent on a controversy with only tangential contacts with Philadelphia."

The *Tyro* court also considered the state of New York's statute of limitations which provided the appellant with sufficient time within which to file another complaint in the appropriate forum (in our case, the stipulation to be filed by the defendant satisfied this requirement).

It was in the context of the necessity in *Tyro* for the filing of a new action that the *Tyro* court mentioned that "no discovery had yet been taken when the court (trial court) filed its opinion." (418 Pa. Super. at 302, 614 A.2d at 282.) The *Tyro* court does not address whether the extent of discovery already taken could by itself have changed the result.

The case of *Shears v. Rigley,* 424 Pa. Super. 559, 565-67, 623 A.2d 821, 824-25 (1993), provides guidance on

the balancing of private and public elements or factors as follows:

"A court must balance the private and public elements and 'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.' *Petty,* 363 Pa. Super. [277] at 281, 525 A.2d [1230] at 1232 [(1987)] (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)).

"The trial court must consider the following 'private' elements in making this determination:

" 'the relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if a view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'

"*Petty,* 363 Pa. Super. at 281-82, 525 A.2d at 1232 (citing *Gulf Oil Corp.,* 330 U.S. at 508-509, 67 S.Ct. at 843); see also, *Rini v. N.Y. Central R. Co.,* 429 Pa. 235, 239, 240 A.2d 372, 374 (1968); *Plum v. Tampax Inc.,* 399 Pa. 553, 560-61, 160 A.2d 549, 553 (1960).

"Additionally, the following 'public' interests must be factored into the trial court's analysis:

"problems of creating court congestion and imposing jury duty upon people of a community which has no relation to the litigation; the appropriateness of having the action tried in a forum where the court is familiar with the law that must govern the case, rather than having a

court in some other forum step into a quick-sand of conflict of laws problems and foreign law.

"*Petty,* 363 Pa. Super. at 282, 525 A.2d at 1232 (citing *Gulf Oil Corp.,* 330 U.S. at 508-509, 67 S.Ct. at 843); see also, *Rini v. N.Y. Central R. Co.,* 429 Pa. 235, 239, 240 A.2d 372, 374 (1968); *Plum v. Tampax Inc.,* 399 Pa. 553, 560-61, 160 A.2d 549, 553 (1960).

"Appellants have presented both 'private' and 'public' elements which, they contend, make a strong case for dismissal. The trial court found that the Shears reside and are domiciled in New Jersey; that the cause of action and location of the K-Mart department store were located in New Jersey; and, that witnesses also live in New Jersey. However, it is apparent from the trial court's 1925(b) opinion that these factors were specifically balanced against the weighty consideration to be given to a plaintiff's choice of forum. The trial court balanced these factors against the following: *that the defendant* and key witness Rigley *lives in Pennsylvania; that Mrs. Shears received some of her medical treatment in Philadelphia;* that the *appellants sought the expert opinions of physicians located in Pennsylvania who ultimately may be called to testify at trial; and, that K-Mart maintains six stores in the Philadelphia area. The trial court concluded that the private elements* established by Rigley and K-Mart *did not . . .* override the Shears' choice of venue. (emphasis supplied)

"However, our analysis does not stop here. The trial court must also analyze certain 'public' interests before reaching a determination. *Petty, supra.* Appellants take issue with the trial court's failure to consider the Phila-

delphia court's substantial backlog of civil cases in rendering its decision. Pennsylvania courts have long recognized the administrative burdens that follow when 'litigation is piled up in congested centers instead of being handled at its origin.' *Plum,* 399 Pa. at 561, 160 A.2d at 553. (citation omitted) It is proper for the trial court to address those considerations affecting the court's own administrative and legal problems, including court congestion. *Petty, supra.* Here, however, the trial court did not dismiss the matter. *As we find that there are sufficient contacts with the Philadelphia forum* (emphasis supplied), we decline to juxtapose the scenario where the trial court dismisses a matter based upon public factors with the scenario where a trial court, well within its discretion, decides to entertain the litigation.

"The appellants contend that the trial court abused its discretion in weighing the relevant factors based on the holding of this court in *Cinousis v. Hechinger Department Store,* 406 Pa. Super. 500, 594 A.2d 731 (1991). This court recognizes the significance of both the 'private' and 'public' interests to be considered by the trial court. When reviewing the trial court's decision to dismiss a matter based on forum non conveniens, this court will find an abuse of discretion if the trial court has clearly erred in weighing the factors to be considered. *Petty,* 363 Pa. Super. at 282, 525 A.2d at 1232-33. (citation omitted) In *Cinousis, the court considered whether the trial court abused its discretion in dismissing the action* under section 5322(e). The trial court *found that there were no contacts with the Pennsylvania forum other than the fact that the defendant had operated at least one store in*

*Philadelphia.* In contrast, as recounted above, the trial court here found that the appellants had significant contacts with the Pennsylvania forum. Thus, the trial court's refusal to dismiss the action based on these contacts with Philadelphia County, coupled with the trial court's *implicit* finding that the matter would not be placed on a 'stockpile' of pending civil suits, was not an abuse of discretion. (emphasis supplied) *Petty, supra; Brown, supra; Caplan, supra; Hosiery, supra.*"

The *Shears* court affirmed the trial court's retention and refusal to dismiss on the merits as well as because no stipulation was offered to waive the statute of limitations, unlike the case at bar.

The public interest in efficient judicial administration strongly favors dismissing this action pending and refiling same in the available alternate forum of Ohio, Florida or North Carolina. There is simply no valid reason that the people of Philadelphia County should bear the burdens of adjudicating. *James A. Wood Inc.,* 418 Pa. Super. 296, 302, 614 A.2d 279, 282 (1992) ("if the case were heard in Philadelphia, Pennsylvania, tax dollars would be spent on a controversy with only tangible contacts with Philadelphia"); *Endre v. Trump Marina,* 42 D.&C.4th 106, 110 (Phila Cty. 1999) (opining that citizens of Philadelphia should not be subjected to jury duty in action where neither plaintiff nor defendant is a taxpaying citizen of Pennsylvania).

Trial of this lawsuit in Philadelphia would also give rise to needless legal complexity. Because Ohio, Florida or North Carolina law would most likely apply in this case, see *Griffith v. United Air Lines Inc.,* 416 Pa. 1, 203

A.2d 796 (1964), the court would be required to engage in a conflict of laws analysis and to apply unfamiliar foreign law. This fact alone weighs strongly against trying this action in a Pennsylvania court. See *Tyro,* 418 Pa. Super. at 301, 614 A.2d at 282 (emphasizing "appropriateness of having the action tried in a forum where the court is familiar with the law that must govern the case, rather than having a court in some other forum step into a quick-sand of conflict of laws problems and foreign law").

Perhaps the most compelling public interest factor favoring a dismissal or stay on forum non conveniens grounds is the enormous burden that this court already faces in the coordinated PPA litigation. Several hundred individual PPA cases have already been filed in Philadelphia County. Most of those cases, like this one, involve out-of-state plaintiffs who chose to file in Philadelphia County for no apparent reason other than the fact that their attorneys have their offices here—a fact of no relevance to a forum non conveniens analysis. *Cinousis v. Hechinger Department Store,* 406 Pa. Super. 500, 504, 594 A.2d 731, 733 (1991).

Under the procedural context of this case, the filing by the defendant of the instant motion three and one-half months prior to trial cannot be said to be untimely.

While Pennsylvania cases under Rule 1006(d)(1) are analyzed under a different standard in order to transfer to another county within Pennsylvania, the case of *Borger v. Murphy,* 797 A.2d 309 (Pa. Super. 2002), approved of a change of venue three days before jury selection on a petition filed about six weeks prior to the scheduled trial,

and stated that the trial court did not abuse its discretion. (At page 312.)

Also, the case of *James E. Wood v. DuPont,* 2003 Pa. Super. 268, 2003 Pa. Super., Lexis 2082, decided en banc by the Superior Court, affirmed a Philadelphia Common Pleas Court judge's transfer of a personal injury case against a DuPont research facility from Philadelphia to Bradford County and stated that timeliness *"in and of itself"* was not a bar to a court's decision to grant a *transfer* even after the close of discovery. Just as Rule 1006(d)(1) did not impose a limit on parties seeking to transfer venue, 42 Pa.C.S. §5322(e) also does not impose a time limit for parties seeking to dismiss for forum non conveniens under that statute. Just as in *Wood, supra,* plaintiff cites no case in Pennsylvania where a motion to dismiss under 42 Pa.C.S. §5322(e) was denied based solely on the timeliness of the motion.

In *Farley v. McDonnell Douglas Truck Services Inc.,* 432 Pa. Super. 456, 638 A.2d 1027 (1994) cited by plaintiffs (in footnote 1 on pages 11 and 12 of response), the Superior Court noted that the trial court which granted motion to dismiss had failed to make a finding that an alternative forum was available, unlike the instant case, and, thus, the Superior Court found the trial court had abused its discretion in dismissing the complaint. The *Farley* trial court, *supra,* failed to consider that a year's worth of discovery had taken place in Philadelphia, whereas we have considered that factor.

In this case, the fact that discovery has already taken place is outweighed by the following: (1) that discovery may be utilized in the new forum, (2) by the private fac-

tor analysis showing virtually no contact with Pennsylvania, and (3) by the public factor analysis, on its own. Accordingly, this court has provided little weight to that prior discovery factor.

Here, unlike cases cited in *Farley* which considered delay as a factor, the parties themselves permitted the time for filing such a motion to dismiss by preparing the various case management orders and providing for a discovery schedule that allowed and justified the time of filing this motion in this case. One must *await* appropriate discovery deadlines in order that the record be established that will permit consideration of a motion to dismiss pursuant to section 5322(e) if such a motion is contemplated.

More importantly, in *Farley* the appellants were residents of Philadelphia, Pennsylvania; appellant was treated in Philadelphia for his injury; and at least one of the defendants had an office in Philadelphia, all factors considered by the trial court in *Farley*. *But* the *Farley* court emphasized that witnesses concerning the appellant's employment and other key documents and witnesses were all in Pennsylvania and *not* considered by the trial court. (432 Pa. Super. at 463, 638 A.2d at 1030.)

In that context, in *Farley*, the delay and discovery already taken was just the icing on the cake, not a single determinative factor as the plaintiff here argues. Here the congestion is not in Philadelphia courts generally, as argued in *Farley*, *supra*, but in the mass tort litigation section in which Philadelphia has been a pioneer and the effectiveness of which is now in jeop-

ardy because of the nationwide infusion of cases without significant contact or connection to Pennsylvania. Philadelphia here, unlike *Farley,* does not have an interest in a case without any significant contact and certainly not where a Pennsylvania resident is not involved.

There are clear examples of the defendant having been hampered in defending itself and the ability to defend itself at trial. *Cinousis, supra,* refers to the *"possibility of delay and increased costs in completing a trial."* (406 Pa. Super. at 504, 594 A.2d at 733.) (emphasis added) The admitted facts set forth in the petition to dismiss and the response reasonably suggest that prior to the trial in this case, it is likely that witnesses may be unwilling to testify live and document retrieval may suddenly be difficult with attendant significant costs.

The benefits of Pennsylvania coordinated proceedings will not be lost with an action in a new forum, for example, the state of Ohio, Florida or North Carolina. The interests of Pennsylvania citizens to the instant case are tangential and not of any significance.

The so-called trend in mass tort pharmaceutical cases against using the doctrine of forum non conveniens just does not exist in Pennsylvania state courts, an admitted leader in the mass tort pharmaceutical area. There is enough of an exploding area of complex mass tort litigation involving Pennsylvania citizenry and/or key witnesses connected to liability and/or damages to Pennsylvania without burdening a valuable system by stretching its resources to an undesirable limit.

It certainly is reasonable from this record to conclude that the substantial choice of law decisions appear to be non-Pennsylvania in nature.

The emphasis on delay in asserting section 5322(e) motions in federal courts is not shared in Pennsylvania courts as noted *supra*. This is not the first issue on which those courts respectfully disagree.

The case at bar is not a national case and does not have strong ties to Pennsylvania. Pennsylvania intends to maintain its significant role in mass tort litigation by applying its efforts strenuously in appropriate cases with appropriate Pennsylvania contacts.

Since the advent of asbestos litigation, the number and scope of these cases have grown dramatically. There have been approximately 24 mass tort programs in Philadelphia and currently, there are 13 ongoing programs here: asbestos, bone screw, lead paint, carpal tunnel syndrome, latex gloves, Fen-Phen, Lotramex, the Pier 34 collapse, Silica, Propulsid, *PPA* (emphasis supplied), Baycol and Rezulin. There are presently 7,135 outstanding cases as of September 12, 2003, in the mass tort programs. In 1992, Philadelphia County was the first jurisdiction in the country to create a separate litigation program and facility, the Complex Litigation Center, to handle what the Pennsylvania Supreme Court properly envisioned as an exploding area of tort litigation. This judge was appointed to coordinate the various mass tort programs.

If the instant case is not properly dismissed under section 5322(e), then virtually no case would be subject to such dismissal and that was not the intent of that Pennsylvania legislation.

On both and either analysis of private and public factors, the balance favors a dismissal of this case because this court has determined that a tribunal in another jurisdiction, *i.e.,* the state of Ohio, Florida or North Carolina, offers a more convenient and appropriate situs for the action; and Pennsylvania is an inconvenient forum. In the exercise of this court's discretion, I dismiss this matter because the circumstances presented in this case supply the "weighty reasons" necessary to disturb the plaintiff's choice of forum.

This court finds that in the interest of substantial justice, the matter should be heard in another forum, and the plaintiff's action is dismissed with defendant providing the necessary stipulations noted *supra.*

The only conceivable basis for bringing suit in this forum is that Bayer maintains its U.S. headquarters in Pennsylvania (at the other end of the state from Philadelphia) and transacts business within Philadelphia County, as it does in virtually every county across the country. Bayer's general business operations within this state and county are not sufficient to defeat a motion for dismissal based on forum non conveniens. See *Rini,* 429 Pa. at 239, 240 A.2d at 373-74; *Tyro,* 418 Pa. Super. at 299-302, 614 A.2d at 281-82; *Cinousis,* 406 Pa. Super. at 502-503, 594 A.2d at 732; *Westerby,* 32 D.&C.3d at 174-75 (granting motion despite defendant's residence within forum, and observing that to hold otherwise would "effectively strip the doctrine of the flexibility needed to make it a legitimate and viable tool for declining jurisdiction when the plaintiff has unfairly or unreasonably invoked the jurisdiction of an inconvenient forum").

As this court aptly concluded: "The connection of Bayer to Pennsylvania, *i.e.,* doing business in Pennsylvania, corporate office in Pittsburgh, apply to jurisdiction and propriety of venue which are not at issue in this case." *Pearson v. Bayer,* slip op. at 23.

With respect to Bayer witnesses, deposition discovery of Bayer was conducted in the federal MDL proceedings. The MDL court exercises plenary jurisdiction over Bayer witnesses and provides the ability to notice or subpoena corporate defendant depositions regardless of where the witness may be located. Those depositions are then cross-noticed in cases pending in state courts throughout the country, including Ohio, Florida or North Carolina. Thus, any perceived advantage of having a few Bayer witnesses subject to this court's jurisdictional reach is illusory at best, as all Bayer witnesses are subject to compulsory attendance in the MDL proceedings. Indeed, "[t]he benefits of Pennsylvania coordinated proceedings will not be lost with an action in a new forum[.]" *Id.* at 24.

Likewise, the documents that Bayer produces in the MDL proceedings will be as readily available (in easily transported CD-ROM form) for viewing in Ohio, Florida or North Carolina as in Philadelphia.

In sum, there is no meaningful connection between Ms. Roberts-Hudson's lawsuit and Philadelphia County. In contrast, there are abundant connections—residence of the plaintiff, accrual of her claims, location of witnesses and documentary evidence—with the available alternate forum of Ohio, Florida or North Carolina. Assessment of the parties' private interest in convenient,

expeditious and economical litigation establishes that "weighty reasons" exist to support dismissal or a stay of this action, pending refiling in Ohio, Florida or North Carolina.

The recent Superior Court opinion in *D'Alterio v. New Jersey Transit Rail Operations Inc.,* 2004 Pa. Super. 42 (2004), does not alter the conclusion that this case should be dismissed. The *D'Alterio* case is distinguishable on a number of different grounds, and, therefore, this court should not adopt its holding here.

In *D'Alterio,* the plaintiff was a resident of New Jersey, was injured in New Jersey and brought suit in Philadelphia against New Jersey Transit, a New Jersey corporation that does business in Philadelphia. The case proceeded to arbitration in the Philadelphia Court of Common Pleas, with the panel finding in favor of the plaintiff. The defendant appealed. After a show cause hearing, the trial judge, sua sponte, proceeded to dismiss the plaintiff's case on forum non conveniens grounds. The Superior Court found that the trial court abused its discretion, giving weight to the fact that the parties had engaged in discovery; the case was set for trial; and at no time did the defendant raise the issue of forum non conveniens. Moreover, at the show cause hearing, the defendant did not allege that its access to sources of proof or witnesses would be impeded by trial in Philadelphia. (*D'Alterio,* slip op., at 7-8.)

In the instant case, the trial judge did not act sua sponte, and the defendant filed a petition to dismiss raising the issues necessary in a forum non conveniens petition and preserving such position. In this case, the defendant did

allege that its access to sources of proof or witnesses would be impeded at trial in Philadelphia.

Perhaps the most obvious difference between this case and *D'Alterio* is the fact that here, a case management order negotiated by the parties themselves governs the filing of dispositive motions. No such case management order was present in the *D'Alterio* case.

Accordingly, the *D'Alterio* case in no way affects the instant opinion of this court.